IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY A. GROSS, individually and as a beneficiary of the W.B. Martin Gross Declaration of Trust, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| LAVINA S. GROSS, individually, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff Jeffery Gross, on behalf of himself and on behalf of the W.B. Martin Gross

Declaration of Trust u/a/d June 16, 1997, as amended and restated ("Trust"), for his complaint

against Lavina Gross, alleges as follows:

## NATURE OF THE ACTION

1.      This is a complaint for financial exploitation of an elderly and disabled person,

undue influence, fraud, conversion, and tortious interference with an expectancy of inheritance.

2.      W.B. Martin Gross ("Martin Gross") was a highly skilled attorney, successful

businessman, and committed public servant.  He was born in Chicago, Illinois in 1936, and

resided in Hinsdale, Illinois nearly all his life.  He graduated from Hinsdale High School,

Amherst College, and Harvard Law School.  He joined the law firm of Martin, Craig, Chester &

Sonnenschein, LLP in 1961 and became a partner in 1968.  He worked with the firm for his

entire career.  His career was distinguished and marked by numerous notable achievements:  he

served as special counsel to United States Vice President Hubert Humphrey from 1967-1969, a

special assistant attorney general in Illinois from 1968-1969, a trustee and president of the

Village of Hinsdale, Chairman of the Anti-Cruelty Society of Chicago, village attorney for LaGrange Park, a trustee and Chairman of King-Bruwaert House, a member and president of Community Consolidated Elementary District 181 in Hinsdale, and Chairman of the West Suburban Transit District. In addition to his law practice, Martin Gross owned and served as President and Chairman of Federated Group, Inc. ("Federated"), a company founded in 1927 and based in Arlington Heights, Illinois that specializes in the development and marketing of private brand grocery products sold throughout the United States and internationally.

3.     Martin Gross, a resident of Illinois, passed away on May 12, 2021, at the age of 84. Martin Gross was survived by his two adult children, both from his first marriage: his daughter Allison Gross and his son Plaintiff Jeffery Gross.

4.     Defendant Lavina Gross was his second wife.

5.     This complaint arises from Defendant Lavina Gross's actions to misappropriate approximately $3,000,000 in life insurance death benefits that Martin Gross had purchased on his life, which he explicitly intended be paid into his Trust for the benefit of all his heirs.

6.     At a time when Martin Gross was experiencing significant cognitive impairment due to dementia and Alzheimer's Disease, Defendant Lavina Gross changed the beneficiary designations on the life insurance policies to remove the Trust as the sole direct beneficiary and instead name herself as the sole direct beneficiary. In so doing, she sought to misappropriate the approximately $3,000,000 in life insurance proceeds and take those monies for herself outside of both Martin Gross's will and Trust.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in

controversy exceeds $75,000.00. In particular, diversity of citizenship exists because Plaintiff is a citizen of California and Defendant is a citizen of Illinois. The amount in controversy exceeds $3,000,000.

8.     The Court has personal jurisdiction over Defendant because she resides in the District and because a substantial part of the events or omissions giving rise to the claims has occurred and continues to occur in this State and District.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims has occurred and continues to occur in this District.

## THE PARTIES

10.     Plaintiff Jeffery Gross is a California resident who lives in Los Angeles.

11.     Defendant Lavina Gross is an Illinois resident who lives in Hinsdale. Defendant Lavina Gross is the individual trustee for the Trust ("Trustee").

## FACTS

12.     Throughout the time Martin Gross was married to Defendant Lavina Gross, he made several revisions to his estate plan.

13.     On information and belief, each time Martin Gross contemplated a change to his estate plan, Defendant Lavina Gross directly advocated for herself to obtain as much wealth and control as she could through his estate plan.

14.     On information and belief, Defendant Lavina Gross always viewed Martin Gross's estate plan as a zero-sum game in which her interests were directly pitted against those of Martin Gross's adult children from his first marriage.

3

15.     Until late 2019, Defendant Lavina Gross insisted that Martin Gross's adult children were strictly forbidden from reviewing his personal estate planning documents.  She, however, had full access to them.

16.     On information and belief, Defendant Lavina Gross also insisted on participating in many, if not all, meetings Martin Gross had with his personal estate planning attorneys regarding his estate plan.

17.     Notwithstanding Defendant Lavina Gross's demand that his adult children be forbidden from reviewing his personal estate planning documents, Martin Gross frequently discussed his estate plan with his adult children and shared versions of his trust in 2010 and 2015 with his son Plaintiff Jeffery Gross.

18.     On information and belief, Defendant Lavina Gross was unaware at the time that Martin Gross had shared versions of his trust with his adult son Plaintiff Jeffery Gross.

19.     On information and belief, Martin Gross did not disclose to Defendant Lavina Gross that he had shared his estate plan with his adult son in order to avoid angering her.

**MARTIN GROSS'S 2015 ESTATE PLAN**

20.     In or around 2015, Martin Gross utilized the law firm of Schiff Hardin to revise his estate plan.  This resulted in, among other things, a fifth restatement of his Trust and a First Codicil to his Will ("Will").

21.     The Trust is the central instrument of Martin Gross's estate plan, through which he made provisions for all his heirs.

22.     The central design of Martin Gross's estate plan is that all his wealth, assets and property are placed into his Trust, and his estate planning intentions are carried out through the Trust.

23.     Both his Will and his Trust reveal his intention that, with one limited exception, none of his heirs would receive any direct bequest of money, property, or other assets outside of the Trust.

24.     The one exception is that through his Will, Martin Gross bequeathed to Defendant Lavina Gross all his interests in "airline, hotel, credit card, or other rewards programs."  His Will provides no other bequests to Defendant Lavina Gross or anyone else.

25.     Martin Gross owned several life insurance policies on his life that he purchased through The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") with a combined death benefit of approximately $3,000,0000 (the "Policies").

26.     On information and belief, Defendant Lavina Gross's adult son from her first marriage was Martin Gross's representative at Northwestern Mutual.

27.     Martin Gross specifically intended that the death benefits on the Policies be directed to the Trust.  In or around November of 2015, Martin Gross instructed Northwestern Mutual to designate his Trust as the sole direct beneficiary of those policies.

28.     The death benefit on the Policies would have accounted for a substantial portion of the liquid assets in the Trust.

29.     Martin Gross's Trust reflects his clear intention that certain funds in the Trust be used during Plaintiff Lavina Gross's lifetime for her health, maintenance, and support and that surplus assets and property be passed to his adult children upon her death.

30.     Martin Gross specifically did not intend for Defendant Lavina Gross's adult child from her prior marriage to receive any significant portion of the wealth or assets in his estate.

31.     The Trust contains a "no contest" clause.  Through this action, Plaintiff Jeffery Gross does not challenge or contest the validity of the Trust, or Martin Gross's Will, nor does

Plaintiff contend, or seek an adjudication, that any provisions of those instruments are null or void.

## MARTIN GROSS'S COGNITIVE IMPAIRMENT

32.     On information and belief, in 2016 or 2017, Martin Gross was medically diagnosed as suffering from Alzheimer's disease and dementia.

33.     In or around June 2017, Martin Gross suffered a serious seizure and was taken by ambulance to AMITA Health Adventist Medical Center Hinsdale ("Adventist Hinsdale") where he was admitted to the emergency room. Doctors at Adventist Hinsdale performed an MRI and/or a CAT scan of Martin Gross's brain.

34.     A doctor specializing in neurology at Adventist Hinsdale spoke in person with Martin Gross's daughter Allison Gross at Adventist Hinsdale regarding his analysis of the brain imaging. In discussing Martin Gross's diagnosis and treatment, he informed Allison Gross that Martin Gross's brain had clear and notable cerebral atrophy (i.e. brain shrinkage) and he was experiencing significant cognitive impairment.

35.     Following his seizure in 2017, but possibly earlier, Martin Gross's cognitive impairment had rendered him unable to properly manage his personal financial affairs or balance his checkbook, as he had done his entire adult life.

36.     As a direct result of Martin Gross's cognitive impairment, in 2018, but possibly earlier, Defendant Lavina Gross took complete control of all of Martin Gross's financial and business affairs.

37.     As a direct result of Martin Gross's cognitive impairment, in 2018, but possibly earlier, Defendant Lavina Gross took also took control of certain aspects of Martin Gross's professional affairs.

38.     On information and belief, in 2018, but possibly earlier, Martin Gross was assessed by one of his doctors as experiencing Stage 4 Alzheimer's disease.

39.     In 2018, several months before changing the beneficiary designation on the Polices, Defendant Lavina Gross told Plaintiff Jeffery Gross in an in-person conversation that she believed Martin Gross was actually experiencing Stage 5 Alzheimer's disease.

40.     In 2018, Martin Gross's cognitive impairment had rendered him unable to perform simple arithmetic, such as calculating a tip on a restaurant bill.

41.     In 2018, as a result of his cognitive impairment, Martin Gross was often confused as to his surroundings (where he was or his purpose for being there) and had difficulty understanding and estimating time.  He frequently was unable to identify the correct day, date, or year.

42.     In 2018, as a result of his cognitive impairment, Martin Gross regularly confused the identities of family members, both alive and dead.  For example, he would sometimes refer to his son Jeffery as Dee, who was Martin Gross's deceased brother.  He would also sometimes refer to his daughter Allison as Sandra, who was Martin Gross's deceased first wife and Allison's mother.

43.     In 2018, as a result of his cognitive impairment, Martin Gross frequently confabulated.  For example, he regularly stated his belief that his deceased brother had recently died from falling off a mountain in a mountain climbing accident.  In fact, Martin Gross's brother had died from cancer many years prior.

44.     In 2018, as a result of his cognitive impairment, Martin Gross was profoundly confused regarding business matters and the relative value of money.  For example, in 2018, when an individual shareholder of Federated put his approximately 7% shares in Federated to

Martin Gross, Martin Gross was unable to grasp the nature of the transaction and the amount of money at issue. For example, Martin Gross could not recall that he was a party to a shareholder agreement with the individual shareholder that had a put/call provision, which required Martin Gross to personally purchase the individual shareholder's shares if put to him. Martin Gross often could not remember the name of the individual shareholder—a person whom he had been friends and business partners with for more than 20 years. Martin Gross regularly referred to the individual investor as "that guy." Martin Gross regularly stated that he was being sued by the individual shareholder for $500 million. In fact, Martin Gross was not being sued by the individual shareholder, and the value of the approximately 7% shares was not remotely close to $500 million.

45.     Martin Gross's belief that the value of the shares being put to him pursuant to the shareholder agreement was $500 million would have meant that Martin Gross's shares in Federated were worth more than $50 billion—an absurdly high number relative to the actual value his shares in Federated. In 2018, as a result of his cognitive impairment, Martin Gross was not able to understand that correlation.

46.     In 2018, as a result of his cognitive impairment, Martin Gross also expressed confusion as to whether he owned or rented his home in Hinsdale. In fact, he had purchased the home around 1972.

47.     In 2018, as a result of his cognitive impairment, Martin Gross was also beginning to express confusion as to whether or not his home in Hinsdale was actually his home, or some other home where he did not belong.

48.     In 2018, Martin Gross was often able to carry on a conversation, the substance of which was small talk, niceties, and jokes. He relied heavily on his ability to do this in his

interactions with people. However, his ability to engage in small talk during casual conversations concealed the fact of his significant cognitive impairment. In fact, in 2018, as a result of his cognitive impairment, Martin Gross was not able to consistently and reliably carry-on cogent discussions on any matter more complicated than basic casual banter.

49.     In 2018 and 2019, as a result of his cognitive impairment, Martin Gross would frequently sign documents that Defendant Lavina Gross placed in front of him and asked him to sign—documents that Martin Gross had neither read nor understood.

50.     On information and belief, in 2018, if not earlier, a written durable power of attorney document existed granting Defendant Lavina Gross power to act on Martin Gross's behalf ("Power of Attorney").

51.     On information and belief, Defendant Lavina Gross accepted and acted on the powers conferred to her under the Power of Attorney.

52.     On information and belief, in 2018, if not earlier, Defendant Lavina Gross had assumed full responsibility for all of Martin Gross's financial and business affairs. This included maintaining his bank accounts, maintaining his investments, paying his bills, managing his interests in the business he owned, namely Federated.

53.     On information and belief, in 2018, Defendant Lavina Gross has assumed control of certain aspects of Martin Gross's professional affairs, including communicating on his behalf in interactions with his law partners regarding matters at his law firm, where he was still a member.

54.     On information and belief, in or around late 2018, Defendant Lavina Gross unilaterally took complete control over the management and operations of Federated.

55.     On information and belief, in early 2019, Defendant Lavina Gross promoted herself from Corporate Secretary to President and Chief Executive Officer and granted herself a more than 100% increase in her annual salary.

56.     On information and belief, when Defendant Lavina Gross granted herself the more than 100% increase in her annual salary, she became the highest paid corporate officer in the approximately 95-year history of Federated.

57.     Prior to his cognitive impairment, Martin Gross had specifically refused to promote Defendant Lavina Gross beyond the role of Corporate Secretary—even Martin Gross, who owned more than 80% shares in the company, never assumed the position of President and CEO.

58.     On information and belief, at the time of her self-promotion and salary increase, Defendant Lavina Gross was a minority 10% shareholder of Federated.

59.     On information and belief, Defendant Lavina Gross's self-promotion and substantial salary increase were never considered by the Board of Directors and there was no Board of Directors resolution approving her self-promotion and raise.  Indeed, at the time the Board of Directors consisted only of Martin Gross, who was significantly cognitively impaired, and Defendant Lavina Gross.

60.     Federated's bylaws require the Board of Directors to consist of five members.

61.     Since promoting herself to President and CEO of Federated and granting herself a substantial salary increase, Defendant Lavina Gross has never constituted a Board of Directors consisting of five members in compliance with Federated's bylaws.

62.     In 2018, if not earlier, Defendant Lavina Gross took full control for managing and administering all of Martin Gross's medications.

63.     Martin Gross was a type 1 diabetic.  In addition to a variety of other medications, Martin Gross required administration of insulin several times a day and regular checks of his blood glucose levels.  Defendant Lavina Gross took full control for monitoring his blood glucose levels and ensuring he received timely and appropriate dosages of insulin.

64.     In 2018, if not earlier, Defendant Lavina Gross took full control for handling all of Martin Gross's doctor and other medical appointments.

65.     In 2018, if not earlier, Defendant Lavina Gross took full control for Martin Gross's physical transportation needs because he could no longer operate a vehicle.

66.     In 2018, if not earlier, Martin Gross was almost entirely dependent upon Defendant Lavina Gross for his financial, medical, and physical needs and requirements.

## DEFENDANT LAVINA GROSS'S SCHEME TO MISAPPROPRIATE MARTIN GROSS'S LIFE INSURANCE PROCEEDS

67.     On information and belief, after Defendant Lavina Gross took over Martin Gross's financial affairs, she began a process of acquiring specific information regarding the total value of money and assets that Martin Gross held.

68.     On information and belief, Defendant Lavina Gross conceived of the change of beneficiary designation on the Policies as a means to directly obtain the approximately $3,000,000 in life insurance proceeds Martin Gross intended for his Trust in a manner that would circumvent both Martin Gross's Will and Trust.

69.     On information and belief, in or around December 2018, Defendant Lavina Gross orchestrated and executed a change of beneficiary designation on the Policies.  She caused the Trust to be removed as the sole direct beneficiary and caused herself to be named as the sole direct beneficiary on the Policies.

70.     On information and belief, Lavina Gross caused the change of beneficiary designation on the Policies by instructing Northwestern Mutual to make such change.

71.     On information and belief, when Defendant Lavina Gross caused the change of beneficiary designations on the Polices it either did not require Martin Gross's physical signature or Defendant Lavina Gross obtained Martin Gross's physical signature without him understanding what he was signing or the nature and import of providing his signature.

72.     On information and belief, confirmation of the successful change of beneficiary designation on the Policies was sent by Northwestern Mutual to Defendant Lavina Gross's personal email address.

73.     At the time Defendant Lavina Gross caused the change of beneficiary designation on the Policies to name herself as the sole beneficiary, Martin Gross lacked the cognitive ability to fully understand and consent to the changes to his life insurance beneficiary designations.

74.     At the time Defendant Lavina Gross caused the change of beneficiary designation on the Policies to name herself as the sole beneficiary, Martin Gross did not understand the substantial effect such change would have on his estate plan and the severe financial harm it would cause his other heirs.

75.     On information and belief, Martin Gross never received professional counsel or guidance from a third party with no financial stake in his affairs regarding the change in beneficiary designations on the Policies and the impacts it would have on his estate plan and other heirs.

76.     In causing the change of beneficiary designation on the Policies, Defendant Lavina Gross sought to misappropriate the approximately $3,000,000 in death benefits on the

Policies for herself and obtain those funds directly, free from taxes and outside of the Will and Trust, in blatant contravention of Martin Gross's clear estate planning wishes.

77.     Defendant Lavina Gross's actions to cause herself to be named as sole direct beneficiary of the Policies was an act of pure greed orchestrated by her with full knowledge that doing so would both upend Martin Gross's 2015 estate plan and result in direct and substantial harm to Martin Gross's adult children, including Plaintiff Jeffery Gross, who were his other heirs.

78.     Defendant Lavina Gross's scheme to divert approximately $3,000,000 away from the Trust and misappropriate those funds for herself has, in fact, upended Martin Gross's carefully drafted estate plan, through which he made provisions for all his heirs, and harmed Plaintiff.

79.     On information and belief, as a direct and proximate result of Defendant Lavina Gross's actions, the trustees of the Trust have failed to carry out one of Martin Gross's key estate planning objectives and one of the Trust's principal directives, namely funding of two Descendants' Trusts, one for each of his adult children (each a "Descendant Trust" and collectively the "Descendants' Trusts"), including for Plaintiff, upon Martin Gross's death.

80.     There is no precedent for Martin Gross ever contemplating an estate plan or financial arrangement that would have directed a seven-figure sum to anyone outside of either his Will or Trust. The only plausible explanation for the change in beneficiary designation is that Defendant Lavina Gross took advantage of Martin Gross's cognitive impairment to wrongfully obtain the approximately $3,000,000 in death benefits Martin Gross had intended for the Trust.

81.     In connection with causing the change of beneficiary designation on the Policies, Defendant Lavina Gross financially exploited Martin Gross, an elderly and disabled person.

82.     In connection with causing the change of beneficiary designation on the Policies, Defendant Lavina Gross exercised undue influence over Martin Gross.

83.     In connection with causing the change of beneficiary designation on the Policies, Defendant Lavina Gross engaged in fraud and/or conversion, in that she misrepresented or concealed critical material information from Martin Gross regarding the change in beneficiary designation or failed to inform Martin Gross that she was changing the beneficiary designation.

84.     In connection with causing the change of beneficiary designation on the Policies, Defendant Lavina Gross has tortiously interfered with Plaintiff Jeffery Gross's expected inheritance.

85.     Defendant Lavina Gross's actions, as alleged herein, resulted in direct and proximate harm to Martin Gross's Trust, which has been deprived of approximately $3,000,000 in funding.

86.     Defendant Lavina Gross's actions, as alleged herein, resulted in direct and proximate harm to Martin Gross's other heirs, including Plaintiff Jeffery Gross.

87.     Through this Complaint, Plaintiff Jeffery Gross seeks to protect and vindicate the interests of the Trust by restoring to the Trust assets that Martin Gross intended for it—assets that Defendant Lavina Gross has thus far deprived from the Trust—and seeks redress for the substantial damage and harm Defendant Lavina Gross's actions have caused him.

## FIRST CLAIM
(Financial Exploitation Of An Elderly Person Or A Person With A Disability
755 ILCS 5/2-6.2, 720 ILCS 5/17-56)

88.     Plaintiff Jeffery Gross re-alleges and incorporates by reference each of the foregoing paragraphs, as though fully set forth herein.

89.     At all times relevant to the acts alleged herein, Martin Gross was an elderly person because he was older than 60 years of age.  720 ILCS 5/17-56(c)(1).

90.     At all times relevant to the acts alleged herein, Martin Gross was a person with a disability because he suffered from mental impairment resulting from disease, injury, a functional disorder or congenital condition that impaired his mental ability to independently manage his property and financial resources.  720 ILCS 5/17-56(c)(2).

91.     At all times relevant to the acts alleged herein, Defendant Lavina Gross stood in a position of trust and confidence with Martin Gross because she was his spouse, had a fiduciary relationship with him, and was a primary caregiver for him.

92.     By engaging in the acts alleged herein, Defendant Lavina Gross financially exploited Martin Gross because she stood in a position of trust or confidence with him and knowingly by deception and/or intimidation obtained control over his property.

93.     Defendant Lavina Gross misappropriated Martin Gross's assets and resources by various means, including but not limited to breach of a fiduciary relationship, undue influence, fraud, and conversion.

94.     As a direct and proximate cause of Defendant Lavina Gross's financial exploitation of Martin Gross, the Trust has been damaged in an amount as yet to be determined, but in all events exceeding $3,000,000.

95.     As a direct and proximate cause of Defendant Lavina Gross's financial exploitation of Martin Gross, Plaintiff Jeffery Gross has been damaged in an amount as yet to be determined.

## SECOND CLAIM
(Undue Influence)

96.     Plaintiff Jeffery Gross re-alleges and incorporates by reference each of the foregoing paragraphs, as though fully set forth herein.

97.     At all times relevant to the acts alleged herein, Defendant Lavina Gross stood in a fiduciary relationship with Martin Gross.

98.     In 2018, if not earlier, Martin Gross was almost entirely dependent upon Defendant Lavina Gross for his financial and physical requirements and Defendant Lavina Gross, who had no physical or cognitive impairment, was in a dominant role with regard to Martin Gross and exercised control over almost every aspect of his life.

99.     At all times relevant to the acts alleged herein, Martin Gross reposed trust and confidence in Defendant Lavina Gross.

100.    Defendant Lavina Gross prepared, procured, and/or executed the change of beneficiary designation on the Policies through which she would personally obtain a $3,000,000 financial benefit.

101.    On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross exerted undue influence over Martin Gross and prevented the free will of Martin Gross through fraud, deceit, threats, and intimidation.

102.    On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross engaged in fraud and deceit by concealing from Martin Gross and/or misrepresenting to him material information regarding the fact of the change of the

16

beneficiary designation and/or the substantial effect such change would have on his estate plan and the severe financial harm it would cause his other heirs.

103.    On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross engaged in threats and intimidation by threatening to divorce Martin Gross and thereby abandon him as his caretaker.

104.    For example, on at least two occasions in 2019, when Plaintiff had learned that Defendant Lavina Gross had caused the change of beneficiary designation on the Policies and requested restoration of the previous beneficiary designation of the Trust as sole direct beneficiary, Defendant Lavina Gross responded to Plaintiff by threatening to divorce Martin Gross and "take half of everything" if she were forced to redesignate the Trust as sole beneficiary of the Policies.  Defendant Lavina Gross made these statements in the presence of Martin Gross, which caused him visible and significant emotional distress.

105.    As a direct and proximate cause of Defendant Lavina Gross's undue influence, the Trust has been damaged in an amount as yet to be determined, but in all events exceeding $3,000,000.

106.    As a direct and proximate cause of Defendant Lavina Gross's undue influence, Plaintiff Jeffery Gross has been damaged in an amount as yet to be determined.

### THIRD CLAIM
(Fraud)

107.    Plaintiff Jeffery Gross re-alleges and incorporates by reference each of the foregoing paragraphs, as though fully set forth herein.

108.    On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross misrepresented and/or concealed critical material information from Martin Gross regarding the change in beneficiary designation and the substantial effect

17

such change would have on his estate plan and the severe financial harm it would cause his other heirs.

109.     On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross misrepresented Martin Gross that the change of beneficiary designation would not in any way affect or alter the benefits he intended for each of his heirs through his estate plan or the overall distribution of his wealth and assets among his heirs.

110.     On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross concealed and failed to disclose to Martin Gross that the change of beneficiary designation would likely render the Trust unable to fund the Descendants' Trusts for his adult children, as Martin Gross specifically intended as part of his estate plan.

111.     On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross concealed and failed to disclose to Martin Gross that the change of beneficiary designation would likely result in a substantial portion of Martin Gross's wealth being passed to Defendant Lavina Gross's heirs, including her adult child from a prior marriage, which was something Martin Gross specifically did not intend as part of his estate plan.

112.     On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross concealed and failed to disclose to Martin Gross that she was changing the beneficiary designation on the Policies.

113.     Martin Gross reasonably and justifiably relied on Defendant Lavina Gross's misrepresentations and concealment of facts.  On information and belief, Martin Gross reasonably relied on Defendant Lavina Gross's misrepresentations because Defendant Lavina Gross created a false sense of security with Martin Gross that she was acting in good faith in the

best interests of Martin Gross and his adult children, blocked and prevented Martin Gross from making any inquiries into the facts, and blocked and prevented Martin Gross from obtaining neutral and unbiased advice from a third party regarding the change in beneficiary designation.

114. Because of Martin Gross's significant cognitive impairment, he could not have discovered the truth of Defendant Lavina Gross's actions, misrepresentations, and concealment of facts through reasonable inquiry.

115. As a direct and proximate cause of Defendant Lavina Gross's fraud, the Trust has been damaged in an amount as yet to be determined, but in all events exceeding $3,000,000.

116. As a direct and proximate result of Defendant Lavina Gross's fraud, Plaintiff has been damaged in an amount as yet to be determined.

**FOURTH CLAIM**
(Conversion)

117. Plaintiff Jeffery Gross re-alleges and incorporates by reference each of the foregoing paragraphs, as though fully set forth herein.

118. On information and belief, in causing the change of beneficiary designation on the Policies, Defendant Lavina Gross failed to obtain proper and valid consent and authorization from Martin Gross, the holder of the Policies, to change the beneficiary designation on his behalf, or failed to inform him of the fact that she was going to change the beneficiary designation on his behalf.

119. Because Defendant Lavina Gross wrongfully caused the change of beneficiary designation on the Policies, the Trust and Plaintiff Jeffery Gross as sole beneficiary of a Descendant Trust for his benefit and remainder beneficiary of the Family Trust and Marital Trust, have a right to the death benefit on the Policies.

120.     Because Defendant Lavina Gross wrongfully caused the change of beneficiary designation on the Policies, and because Martin Gross died on May 12, 2021, the Trust and Plaintiff Jeffery Gross as sole beneficiary of a Descendant Trust for his benefit and remainder beneficiary of the Family Trust and Marital Trust, have an absolute and unconditional right to possession of the death benefit on the Policies.

121.     Plaintiff Jeffery Gross, on behalf of himself as sole beneficiary of a Descendant Trust for his benefit and remainder beneficiary of the Family Trust and Marital Trust and on behalf of the Trust itself, has demanded the Trust be granted possession of the death benefit on the Policies.

122.     Defendant Lavina Gross has refused such demand and has wrongfully and without authorization assumed and asserted her right to control, dominion, or ownership over the death benefit on the Policies.

123.     As a direct and proximate cause of Defendant Lavina Gross's conversion, the Trust has been damaged in an amount as yet to be determined, but in all events exceeding $3,000,000.

124.     As a direct and proximate result of Defendant Lavina Gross's conversion, Plaintiff has been damaged in an amount as yet to be determined.

### FIFTH CLAIM
(Tortious Interference With An Expectancy Of Inheritance)

125.     Plaintiff Jeffery Gross re-alleges and incorporates by reference each of the foregoing paragraphs, as though fully set forth herein.

126.     Martin Gross's Trust established Descendants' Trusts for his adult children upon his death.  The Trust directs that Plaintiff Jeffery Gross's Descendant Trust shall be funded with

a specified amount of cash and Federated stock, which for the purposes of this claim represents Plaintiff's expected inheritance.

127.    Under Article IV(c) of the Trust, funding of Plaintiff's Descendant Trust is mandated and not left to the discretion of the Trustee or Trustees.

128.    Article IV of the Trust also specifies the order in which Trust principal is to be administered and mandates that funding of Descendants' Trusts is to occur before funding of the Family Trust and Marital Trust.

129.    Defendant Lavina Gross interfered with Plaintiff Jeffery Gross's inheritance expectancy individually and as a beneficiary of the Trust by intentionally engaging in the wrongful and tortious conduct alleged herein, specifically changing the beneficiary designation on the Policies.

130.    To date, the trustees of the Trust have not funded Plaintiff's Descendant Trust.

131.    On information and belief, the trustees of the Trust have funded the Family Trust and Marital Trust for Defendant Lavina Gross's benefit.

132.    But for Defendant Lavina Gross's tortious interference as alleged herein, Plaintiff would have received his inheritance and expectancy under the Trust.

133.    As a direct and proximate cause of Defendant Lavina Gross's tortious interference, Plaintiff Jeffery Gross has been damaged in an amount as yet to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jeffery Gross respectfully prays for the following relief:

    A.  Judgement in favor of Plaintiff Jeffery Gross and against Defendant Lavina
        Gross;

B. That Martin Gross's Trust be re-designated as the sole direct beneficiary of the death benefits on the Policies;

C. A judicial order pursuant to 755 ILCS 5/2-6.2(b) that Defendant Lavina Gross shall not receive any property, benefit, or other interest by reason of the death of Martin Gross whether as heir, legatee, beneficiary, survivor, appointee, claimant under 755 ILCS 5/18-1.1, or in any other capacity and whether the property, benefit, or other interest passes pursuant to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, or any other circumstance, and that all of Martin Gross's property, benefit, or other interest shall pass as if Defendant Lavina Gross died before the him;

D. That Plaintiff Jeffery Gross be awarded his damages;

E. That Plaintiff Jeffery Gross be awarded damages of treble the amount of the value of the property obtained by Defendant Lavina Gross pursuant to 720 ILCS 5/17-56(g);

F. That Plaintiff Jeffery Gross be awarded his reasonable attorneys' fees and costs pursuant to 720 ILCS 5/17-56(g);

G. That Plaintiff Jeffery Gross be awarded interest at the applicable statutory rate; and

H. That Plaintiff Jeffery Gross be granted such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Jeffery Gross hereby demands a trial by jury of all issues so triable.

Dated: February 22, 2022

Respectfully submitted,

**JEFFERY A. GROSS**

By:    /s/ Verona M. Sandberg
One of His Attorneys

Verona M. Sandberg (#6279749)

FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Ph: (312) 360-6000
Fax: (312) 360-6520
Email: vsandberg@freeborn.com

*Attorney for Plaintiff Jeffery A. Gross*